Lonnie BUCHANAN, Plaintiff,

v.

CITY OF KENOSHA, County of Kenosha, State of Wisconsin, Bruce W. Becker, Kenosha County Sheriff Department, Kenosha County District Attorney's Office, Waukegan Police Department and Kenneth Kopesky, Defendants.

No. 99–C–207.

United States District Court, E.D. Wisconsin.

June 28, 1999.

Frederick L. Zievers, Madrigrano, Zievers, Aiello and Iaquinta, Kenosha, WI, for plaintiff.

Raymond J. Pollen, Marianne Morris Belke, Crivello, Carlson, Mentkowski and Steeves, Milwaukee, WI, for Defendant Kenosha County and Kenosha Co. Sheriff's Dept.

Kevin P. Reak, Gregg J. Gunta, Joseph A. McCarthy, Gunta and Reak, Milwaukee, WI, for Defendant City of Kenosha and Kenneth Kopesky.

Charles D. Hoornstra, WI Department of Justice, Office of the Attorney General, Madison, WI, for Defendant State of WI, Kenosha Co. D.A.'s office, Bruce Becker.

Lawrence P. Zieger, Zieger Law Office, Milwaukee, WI, for Defendant Police Dept. of Waukegan.

## DECISION AND ORDER

ADELMAN, District Judge.

Lonnie Buchanan brings this civil rights action against a number of government officials and governmental units. Buchanan alleges that he was falsely arrested and unlawfully transported from Waukegan, Illinois, to Kenosha, Wisconsin, where he was held in jail for several weeks before being released.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 1998, Ryan Van Boven, Alton Taylor, Dale Johnson and an unidentified male entered the home of Sacramento K. Garza in the City of Kenosha, intending to rob him. While in the house the unidentified male shot and killed Garza in front of Garza's girlfriend. Subsequently, Van Boven and Taylor were arrested and admitted their involvement in the incident. They described the shooter to Kenosha Police as a black male with a "crippled left arm" who was known to them only as "Hard Times." On February 25, 1999, Kenosha Detective Kenneth Kopesky, based on information provided to him, determined that plaintiff was the shooter and obtained a warrant for his arrest.

On the same day, police in Waukegan, Illinois, acting on information from Kopesky, arrested plaintiff in Waukegan. Plaintiff did not have an incapacitated arm and he alleges that the police had no reason to believe that he was known as "Hard Times." Plaintiff states that Kopesky and Waukegan police attempted to persuade him to waive extradition to Wisconsin, that he refused, but that Kopesky, with the cooperation of Waukegan police, transported him across state lines to Kenosha anyway.

Plaintiff alleges that he was put in a line-up, that Van Boven and Taylor stated that he was not involved in the shooting, and that the victim's girlfriend tentatively identified him but subsequently expressed doubts about the identification to Assistant

District Attorney Bruce Becker, who was present at the line-up. Plaintiff asserts that at the line-up his attorney questioned Becker about not complying with plaintiff's rights regarding extradition but that Becker ignored him. Plaintiff was held, pursuant to the warrant, until a court appearance on March 3, when bond was set at $1,000,000. Plaintiff was unable to post bond and remained in custody until March 13, when all charges were dropped.

Plaintiff then brought this action pursuant to 42 U.S.C. § 1983. He alleges that he was unlawfully arrested in violation of the Fourth Amendment, unlawfully detained without due process in violation of the Fifth and Fourteenth Amendments and that his rights under the Uniform Criminal Extradition Act were violated. Presently before me are motions to dismiss by defendant State of Wisconsin, defendant Kenosha County District Attorney's Office and Assistant District Attorney Becker.

## II. APPLICABLE LAW

A motion pursuant to Fed.R.Civ.P. 12(b)(6) requires the court to decide if the plaintiff's pleadings state a claim upon which relief can be granted. Such motion will be granted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

A motion to dismiss must receive careful scrutiny and is not often granted. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund,* 25 F.3d 417, 420 (7th Cir.1994). The well-pleaded allegations in the complaint must be taken as true. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir.1996). All reasonable inferences must be drawn in the light most favorable to the plaintiff. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). Every reasonable doubt must be resolved in plaintiff's favor.

*Harris v. Brock,* 835 F.2d 1190, 1193–94 (7th Cir.1987).

## III. STATE OF WISCONSIN'S MOTION TO DISMISS

The State of Wisconsin moves to dismiss based on Eleventh Amendment immunity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State...." Supreme Court decisions "establish that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.'" *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting *Employees v. Missouri Dep't of Pub. Health and Welfare,* 411 U.S. 279, 294, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973)). There are three exceptions to Eleventh Amendment immunity:

First, suits against state officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment.... Second, individuals may sue a state directly if Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so and pursuant to a valid exercise of its power.... Finally, individuals may avail themselves of suits against a state that has properly waived its sovereign immunity and consented to suit in federal court.

*Marie O. v. Edgar,* 131 F.3d 610, 615 (7th Cir.1997). None of the exceptions applies here. Plaintiff seeks monetary, not injunctive relief. Congress has not abrogated the state's Eleventh Amendment immunity in regard to § 1983 claims. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Finally, the State of Wisconsin has not waived immunity. Thus, plaintiff's suit against the State of

Wisconsin is barred by the Eleventh Amendment and must be dismissed.

## IV. KENOSHA COUNTY DISTRICT ATTORNEY'S OFFICE MOTION TO DISMISS

Defendant Kenosha County District Attorney's Office moves to dismiss the complaint on two grounds: (1) that the "Kenosha County District Attorney's Office" is not a juristic entity; and (2) that the suit against it is barred by the Eleventh Amendment. I address the defendant's first argument, as it is dispositive.

Federal Rule of Civil Procedure 17(b) provides as follows:

> **(b) Capacity to Sue or be Sued.** The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be. determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except...

Rule 17(b) makes clear that the capacity of the district attorney's office to be sued is determined by Wisconsin law.

I am unaware of any references in the statutes to an entity known as the "district attorney's office." Wis. Stat. § 978.02 refers to the "office of the district attorney" and specifies who is eligible to hold such office. However, no state law authorizes the "office of the district attorney" to sue or be sued.

Wisconsin statutes do refer to "district attorney," and § 978.05 enumerates the duties of the district attorney. These include prosecuting criminal actions, Wis. Stat. § 978.05(1); state forfeiture actions, county traffic actions and certain county ordinance violations, Wis.Stat. § 978.05(2); and instituting or appearing in specified civil actions and special proceedings, Wis. Stat. § 978.05(6). However, these statutes authorize the district attorney to prosecute actions on behalf of the state or county to enforce the laws of these governmental units. No statute authorizes a district attorney as an entity to bring a lawsuit on its own behalf or to be sued as an entity separate from the individual holding the office or the governmental unit of which the district attorney is part.

I find no Wisconsin case that speaks precisely to the issue of whether a district attorney's office may be sued as an entity separate from the governmental unit that the district attorney serves. However, in *Abraham v. Piechowski*, 13 F.Supp.2d 870 (E.D.Wis.1998), plaintiffs filed a section 1983 civil rights action against the "Waushara County Sheriff's Department." The court determined that a sheriff's department was part of a county government and "not a separate suable entity." *Id.* at 873.

*Abraham* is consistent with decisions in other jurisdictions. For example, in *Jacobs v. Port Neches Police Dep't*, 915 F.Supp. 842 (E.D.Tex.1996), the court held that the Jefferson County District Attorney's Office "is not a legal entity capable of suing or being sued." Similarly, in *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir.1991), the court held that "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 312; *see also Revene v. Charles County Comm'rs*, 882 F.2d 870, 874 (4th Cir.1989) ("Office of Sheriff" not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which the "office" is simply an agency); *Hancock v. Washtenaw County Prosecutor's Office*, 548 F.Supp. 1255 (E.D.Mich.1982) (prosecutor's office not a legal entity amenable to suit under § 1983); *In re Scott County Master Docket*, 672 F.Supp. 1152 (D.Minn. 1987) (same as to county attorney and sheriff's offices).

I conclude therefore that an entity characterized as the "office of the district attorney" or as the "district attorney" does not have the authority to sue or to be sued. Thus, plaintiff's claim against the "Kenosha County District Attorney's Office" must be dismissed because the "Kenosha County District Attorney's Office" is not a suable entity. It is, therefore, unnecessary for me to address defendant's alternative argument for dismissal based on Eleventh Amendment immunity.

## V. KENOSHA COUNTY'S MOTION TO DISMISS

Defendant Kenosha County (defendant Kenosha County Sheriff's Department will be regarded as identical to Kenosha County) moves to dismiss based on plaintiff's alleged failure to state a claim for relief. In its motion it included matters outside the pleadings. I initially advised the parties that pursuant to Fed.R.Civ.P. 12(b) I would treat the motion to dismiss as a motion for summary judgment under Fed. R.Civ.P. 56. (Order of 6/10/99.) However, after a telephone conference with the parties it was agreed that I would exclude the matters outside the pleading from consideration and treat the motion as a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

### A. Section 1983 Claim

Defendant argues that plaintiff fails to state a § 1983 claim against the County. I agree, although for a different reason than those asserted by plaintiff. Title 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Although counties are "persons" for purposes of § 1983, liability against counties nevertheless may not arise vicariously; counties cannot be held liable under § 1983 on a respondeat superior basis. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, counties are liable only for acts for which the entity itself is responsible, meaning acts the entity has embraced as policy or custom. *Id.* at 690–91, 694, 98 S.Ct. 2018. To show such responsibility, plaintiffs must prove (1) the alleged deprivations were conducted pursuant to an express policy, statement, ordinance, or regulation that, when enforced, caused the constitutional deprivation; (2) the conduct was one of a series of incidents amounting to an unconstitutional practice so permanent, well-settled, and known to Kenosha County as to constitute a "custom or usage" with force of law; or (3) the conduct was caused by a decision of a municipal policymaker with final policy-making authority in the area in question. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.1995); *see Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018.

In his complaint against the County plaintiff alleges only that "plaintiff was incarcerated in the Kenosha County Jail on the aforesaid warrant, without lawful personal jurisdiction, which defect Kenosha County knew or should have known." (Compl.¶ 22.)

The complaint includes no allegation that any act complained of against the County occurred pursuant to a county policy or was one of a series of incidents amounting to an unconstitutional custom or practice or resulted from the decision of a county policymaker with policymaking authority. Counties cannot be held liable under § 1983 in the absence of proof that the deprivation of constitutional rights was caused by an unconstitutional policy or practice and a § 1983 complaint, like the plaintiff's, which fails to include such an allegation does not state a claim upon which relief can be granted.

### B. State Law Claims

It is unclear from plaintiff's complaint whether he is attempting to assert a claim

against the County based on a violation of state law. His complaint might be construed as alleging that the County should not have kept him in jail and his brief suggests the possibility that the County violated his rights under state extradition law. However, his complaint does not allege that the county played any part either in procuring the arrest warrant on which he was held or in transporting him from Waukegan to Kenosha, the alleged extradition law violation. As against Kenosha County plaintiff's complaint alleges only that he was held in jail pursuant to a facially valid arrest warrant issued by a competent court until a court ordered that he be released. This assertion does not allege a violation of state law.

## VI. BRUCE BECKER'S MOTION TO DISMISS

█ The complaint does not specify whether plaintiff sues Becker in his official or individual capacity. If plaintiff sues Becker in his official capacity the suit must be dismissed. A suit against a governmental officer in his or her official capacity is not a lawsuit against the official but rather is a lawsuit against the official's office. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Abraham,* 13 F.Supp.2d at 874. Thus, if Becker is sued in his official capacity and is considered a state employee the suit must be dismissed pursuant to the Eleventh Amendment. See discussion in Section III above. If Becker is considered a county employee the complaint must be dismissed because it fails to allege the existence of a county policy or practice as required by *Monell.* See discussion in Section V.A. above. I will therefore analyze plaintiff's suit against Becker as an individual capacity claim.

█ Becker, an assistant district attorney in Kenosha County, moves to dismiss the complaint, arguing that he has absolute immunity. A prosecutor is absolutely immune for acts taken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the state, including the professional evaluation of evidence assembled by the police. *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). The basis for this grant of absolute immunity is that the prosecutor is engaged in conduct that is "intimately associated with the judicial phase of the criminal process." *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). In contrast, prosecutors have only qualified immunity for acts related to other functions such as investigation, giving legal advice or swearing out a certificate of probable cause, thus crossing the line between advocacy and participation. *Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).

These principles have been applied by the Seventh Circuit in a number of cases. *See, e.g., Davis v. Zirkelbach,* 149 F.3d 614 (7th Cir.1998) (granting absolute immunity for decision to prosecute based in part on illegally recorded audio tape); *Spiegel v. Rabinovitz,* 121 F.3d 251 (7th Cir.1997) (granting absolute immunity for decision to recommend prosecution based on evaluation of evidence); *Houston v. Partee,* 978 F.2d 362 (7th Cir.1992) (denying absolute immunity for failure to disclose exculpatory evidence discovered after conviction); *Auriemma v. Montgomery,* 860 F.2d 273 (7th Cir.1988) (denying absolute immunity for extrajudicial investigation).

Based on the functional approach specified by the Supreme Court the question is what specific acts of Becker's form the basis of Becker's alleged liability to plaintiff. Plaintiff alleges that Becker was present at a line-up where a witness tentatively identified plaintiff but later informed Becker of her doubts about the identification, (Compl.¶ 25), and that plaintiff's attorney questioned Becker about lack of compliance with extradition rights, which protests Becker ignored, (Compl.¶ 26). Based on the foregoing allegations plaintiff concludes that Becker "caused plaintiff to

be imprisoned without probable cause." (Compl.¶ 35.)

The acts complained of against Becker clearly constitute "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings...." *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606. The police had already arrested plaintiff and Becker was in the process of professionally evaluating the evidence in order to determine whether to proceed with charges against plaintiff. Further, Becker's apparent decision to hold plaintiff based on the evidence available was part of the process of initiating prosecution, a quasi-judicial function for which Becker is absolutely immune. Plaintiff, in fact, concedes in his brief that Becker possesses absolute immunity for relying on the identification by the witness at the line-up as a basis for holding plaintiff even if the identification turned out to be, as plaintiff puts it, a "flimsy misidentification." (Pl.'s Br. at 9 (unnumbered).)

Plaintiff, however, argues that his complaint against Becker should not be dismissed because "[t]he extent of his participation in the plaintiff's illegal asportation from the State of Illinois to Wisconsin is as yet unknown," as is "to what extent he participated in the decision to seize the plaintiff from the state of Illinois and spirit him to the state of Wisconsin, and place him in confinement utilizing clearly unlawful procedure." *Id.* The problem with this argument is that plaintiff does not allege in his complaint that Becker participated in or even knew about the decision to transfer plaintiff from Illinois to Wisconsin in alleged violation of extradition laws. I cannot sustain plaintiff's complaint against a motion to dismiss based on the possibility that Becker committed acts that are not alleged in the complaint. The only acts pled against Becker are those discussed above, all of which relate to his alleged decision to keep plaintiff in jail pending court proceedings based on his assessment of the case. This decision was made in the course of Becker's role as an advocate for the state. Thus, as to the acts alleged in the complaint, Becker is entitled to absolute immunity and his motion to dismiss will be granted.

For the foregoing reasons,

**IT IS ORDERED** that the motions to dismiss filed by the State of Wisconsin, the Kenosha County District Attorney's Office, Assistant District Attorney Bruce Becker, Kenosha County and the Kenosha County Sheriff's Department hereby **GRANTED** and the complaint against those defendants is **DISMISSED.**