# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3515

BOBBI JO WHITING,

*Plaintiff-Appellant,*

v.

MARATHON COUNTY SHERIFF'S DEPARTMENT,
RANDY HOENISCH, RON POSPYCHALLA,
JOHN REED, and PAUL FAUST,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-C-84—**John C. Shabaz**, *Judge.*

———————

ARGUED APRIL 9, 2004—DECIDED AUGUST 30, 2004

———————

Before BAUER, EASTERBROOK, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.*   Bobbi Jo Whiting sued the Marathon County, Wisconsin Sheriff's Department and certain of its employees and officials under 42 U.S.C. § 1983, alleging she suffered damages as a result of her exposure to a substantial risk of injury to which the defendants were deliberately indifferent. The district court granted defendants' motion for summary judgment, Whiting appealed, and we now affirm.

## I. Background

Before delving into the particular facts surrounding the incident giving rise to Whiting's complaint, we need to review the salient details of Whiting's connection to Donald Smith. In 1996, Whiting met a twenty-seven year-old Smith when she was only fifteen. A romantic relationship developed, resulted in the birth of a child in October of 1999, and continued for an additional one to two years.

At some point, the relationship soured. In 2001, Smith, while incarcerated at the Marathon County Jail, attempted to convince a friend to murder Whiting. As a result, on August 14, 2001, Smith was formally charged in Marathon County Circuit Court with conspiracy to commit homicide. At the conclusion of the August 14 hearing, the judge entered an "Order for No Contact Provision." The order prohibited Smith from having any contact with Whiting, whether in person, by telephone, in writing, or through any third parties. It further stated that a violation of the order would be punishable by criminal contempt, including revocation of various jail privileges. One copy of the order was provided to Smith and another was placed in Smith's Marathon County Jail file.

We next recap the circumstances leading to the instant cause of action. On March 21, 2002, Whiting was brought to the Marathon County Jail on a probation hold issued by her probation agent.[1] She arrived around seven or eight o'clock in the evening. Standard intake and booking procedures were followed. The next morning, a thorough intake interview was performed by Classification Officer Susan Rye. As reflected on the "Classification Interview Form,"

---

[1] Interestingly, the probation hold was based upon statements by Smith, indicating that Whiting attempted to hire him to kill her current fiancé. An investigation resulted, but no charges stemming from Smith's allegations were ever filed.

Whiting told Rye that she had a high-risk pregnancy and that Smith was a known enemy. However, the form reflects that Whiting did not request protective custody. Nor did Whiting inform Rye (or the first intake officer) that there was an outstanding court order prohibiting Smith from contacting Whiting.

On the morning of March 23, 2002, Whiting was told that she had an attorney visit, although she was not advised that it was attorney Frederick Voss, counsel for Smith, who had requested to speak with her. Defendant-guard Paul Faust, who had no personal knowledge of the no-contact order, escorted Whiting to the visiting area of the jail. As they walked past the visiting rooms, Whiting saw Smith, attorney Voss, and another individual in one of the rooms. Because the remainder of the visiting rooms were empty, Faust asked Voss if he was the attorney who wanted to speak with Whiting. Attorney Voss responded that he was.

Whiting then waited outside the visiting room for approximately ten minutes. While she waited, brief verbal and non-verbal exchanges took place between Whiting, Smith, and attorney Voss. Eventually, Faust instructed Whiting to enter the visiting room, which she did. At no time prior to or during Whiting's encounter with Smith and attorney Voss did she complain to Faust about speaking with Smith or inform Faust of the no-contact order.

Although attorney Voss undeniably knew there was a court order prohibiting Smith from contacting Whiting, shockingly, Voss did not inform Faust of the order and, at least on this record, appears to have intentionally orchestrated the face-to-face meeting between Smith and Whiting in clear violation of the order.

After Whiting entered the visiting room, a forty-five minute exchange followed among Whiting, Smith, and attorney Voss. During the conversation, Whiting claims Smith, in the presence of attorney Voss, attempted to convince Whiting to

change her testimony regarding certain charges against Smith. Smith also touched Whiting numerous times on her leg. When Whiting refused to change her testimony, Smith began to threaten her. And as Whiting continued to rebuff Smith's entreaties, he became increasingly agitated, grinding his teeth and raising his arms and fists in strong, threatening gestures. Smith at one point even shouted, "You and I are going to box!"

When Faust eventually returned to the visiting room, Whiting immediately left with him. And once out of Smith's earshot she exclaimed, "I was not supposed to be in that room! There's a no-contact order!", and requested to speak with Police Officer Hagenbucher. The next day, Hagenbucher visited Whiting. She recounted the events of the previous day and Hagenbucher assured her that she should not have been in the visiting room with Smith. Whiting was subsequently removed from the Marathon County Jail pending completion of the investigation into her probation hold.

Whiting claims that as a result of her encounter with Smith, she suffered from extreme stress and anxiety, for which medical treatment was required. This stress and anxiety, she asserts, also led her to develop a high-risk pregnancy plagued by various complications, culminating in a premature delivery (an odd allegation given that she indicated to Rye that her pregnancy was high-risk on March 22, one day prior to her encounter with Smith). She also states that since her son's birth on September 5, 2002, he has experienced significant health problems, caused by Whiting's stress during her pregnancy. Based upon these injuries, on February 20, 2003, Whiting filed suit under 42 U.S.C. § 1983 against the Marathon County Sheriff's Department, an agency of the County of Marathon, a governmental subdivision of the state of Wisconsin; Randy Hoenisch, the Marathon County Sheriff; Ron Pospychalla, the Chief Deputy Sheriff; John Reed, the Jail Administrator; and Faust. She alleged that the defendants' deliberate indifference to an objectively ser-

ious risk of harm to Whiting violated the Due Process Clause of the Fourteenth Amendment.

Whiting initially stated her claim under Fourteenth Amendment because she was (arguably) a pre-trial detainee at the time of March 23 incident. However, later, in her brief in opposition to the defendants' summary-judgment motion, Whiting indicated that her claim might actually arise under the Eighth Amendment as she may have had ordinary prisoner status at the time her probation hold was effected. The distinction is immaterial since the legal standard for a § 1983 claim is the same under either the Cruel and Unusual Punishment Clause of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment. *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003); *see also Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002) ("The protections for pretrial detainees are at least as great as the Eighth Amendment protections available to a convicted prisoner, and we frequently consider the standards to be analogous." (internal citation and quotations omitted)). Hence, we do not decide whether Whiting was a pretrial detainee or a prisoner, and we treat her claim as arising under the Eighth Amendment, just as the district court did.

The district court granted the defendants' subsequent motion for summary judgment, and Whiting timely appealed. For the following reasons, we affirm.

## II. Analysis

We review de novo the district court's decision to grant summary judgment and, in doing so, consider the evidence in the light most favorable to the nonmoving party. *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 705 (7th Cir. 2002). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Supreme Court in *Farmer* considered the correct definition of "deliberate indifference." *Id.* at 835-40. After comparing deliberate indifference with common-law tort recklessness, the Court expressly rejected an objective test for deliberate indifference. *Id.* at 837. Because a subjective recklessness test for deliberate indifference "isolates those who *inflict* punishment," the Court concluded that it is the appropriate requirement in Eighth Amendment suits against prison officials. *Id.* at 839 (emphasis added). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In this case, *Farmer* is indisputably dispositive.

Whiting conceded at oral argument that none of the named individual defendants had actual knowledge of the no-contact order. Therefore, under *Farmer*, none can be held liable for any of Whiting's alleged injuries.

Perhaps understanding this unavoidable outcome, in her brief to this court, Whiting waived her appeal as to defendant Faust "because he personally lacked [the necessary] knowledge." Unfortunately, with respect to the other named defendants, Whiting labors under the misguided notion that the knowledge of the intake-officer or Classification Officer Rye can be imputed to Sheriff Hoenisch, Deputy Sheriff Pospychalla, and Jail Administrator Reed. But *Farmer*, since it requires the defendant-official to have actual knowledge of

the risk, foreclosed imputed knowledge as the basis for an Eighth Amendment claim of deliberate indifference. Perhaps Hoenisch, Pospychalla, and Reed failed to alleviate a significant risk of harm they *should have* perceived, but though this is "no cause for commendation, [it] cannot . . . be condemned as the infliction of punishment." *Id.* at 838.

Put differently, Whiting sued the wrong parties—those who lacked actual knowledge of both the risk Smith posed to Whiting generally, and the no-contact order specifically. Concomitantly, Whiting's decision to forego suit against the intake officer and/or Classification Officer Rye remains a riddle. Moreover, at oral argument, surprisingly, neither party knew whether attorney Voss had been disciplined in any way by the Wisconsin agency responsible for lawyer regulation, held in criminal contempt for willfully violating the no-contact order under Wisconsin's counterpart to 18 U.S.C. § 402 (because, as Smith's attorney, Voss was also bound by the court's no-contact order, *see, e.g.,* Fed. R. Civ. P. 65(d)), or if any complaint at all had been lodged against this—attorney.

Whiting's claims against the Sheriff's Department are also doomed. In short, the Marathon County Sheriff's Department is not a legal entity separable from the county government which it serves and is therefore, not subject to suit.[2] *Buchanan v. Kenosha*, 57 F. Supp. 2d 675, 678 (E.D. Wis. 1999) (citing cases). As with the individual defendants, Whiting sued the wrong party.

---

[2] We make no determination as to the viability of a § 1983 action against Marathon County based upon the Sheriff's Department's policies and customs regarding persons identified by prisoners as known enemies and/or no-contact orders entered against inmates.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*