HERMAN NELSON CORPORATION OF MO-LINE, ILL., v. COLUMBUS HEATING & VENTILATING CO.

COLUMBUS HEATING & VENTILATING CO v. HERMAN NELSON CORPORA-TION OF MOLINE, ILL.

(Circuit Court of Appeals, Sixth Circuit. Feb. 8, 1926. Rehearing Denied April 16, 1926.)

Nos. 4379, 4348.

1. Patents ⊙⟶328—Patent for ventilator held not generic, or entitled to broad range of equivalents.

Hubbard patent, No. 1,223,978, for ventilator, *held* not generic, or entitled to broad range of equivalents.

2. Patents ⊙⟶328—1,223,978, claims 11 and 19, for ventilator, held not infringed.

Hubbard patent, No. 1,223,978, claims 11 and 19, for ventilator, *held* not infringed.

3. Patents ⊙⟶82—Discontinuance of manufacture for want of utility not equivalent to failure to manufacture as affects patentee's rights.

Owner of patent is entitled to protection, though it has never manufactured any devices of patent, but there is a substantial difference between failure to manufacture and discontinuance of manufacture for want of utility.

4. Trade-marks and trade-names and unfair competition ⊙⟶59(5)—Trade-mark for ventilator held not infringed.

Trade-mark "Univent" for ventilator apparatus *held* not infringed by another's use of trade-mark "Heatovent."

Appeal and Cross-Appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Patent infringement suit by the Herman Nelson Corporation of Moline, Ill., against the Columbus Heating & Ventilating Company. From a decree holding one of the patents involved valid, and neither infringed, plaintiff appeals, and defendant cross-appeals. Reversed in part, and affirmed in part.

Clarence E. Mehlhope, of Chicago, Ill. (Offield, Mehlhope, Scott & Poole, of Chicago, Ill., on the brief), for Herman Nelson Corporation.

H. A. Toulmin, Jr., and H. A. Toulmin, both of Dayton, Ohio (James M. Butler, of

Columbus, Ohio, on the brief), for Columbus Heating & Ventilating Co.

Before DONAHUE and MOORMAN, Circuit Judges, and SESSIONS, District Judge.

DONAHUE, Circuit Judge. This is an appeal from a decree dismissing a bill of complaint filed by the Herman Nelson Corporation, charging the Columbus Heating & Ventilating Company with infringement of four patents relating to apparatus for the ventilation of buildings.

Two of these patents and a number of claims of the two remaining patents were withdrawn by the appellant from the consideration of the trial court, and the cause was submitted to that court on claims 4, 11, and 19 of Hubbard No. 1,223,978, issued April 24, 1917, claims 2, 3 and 4 of the Shurtleff patent, No. 1,332,923, and the question of infringement of plaintiff's registered trade-mark.

The Hubbard patent relates to a ventilator unit, and the claims in issue of that patent are printed in the margin.[1]

The Shurtleff patent relates to a heating and ventilating unit and the claims in issue of that patent are also printed in the margin.[2]

[1] 4. A ventilator, including a housing, having an air intake and air outlet and comprising an upper blower compartment, a heater compartment below and communicating therewith, and a discharge compartment in front of said heater compartment communicating therewith at the bottom.

11. In a ventilator, the combination with a housing provided with an air intake and an air outlet and having a blower compartment above and a heating compartment below, of a heater in said lower compartment, a cushioned sound insulating support mounted on said heater, and a blower mounted on said support.

19. In a ventilator, the combination with a main housing, having an air intake and an air outlet, a heater mounted therein and supported independently of the walls of said housing, and a blower supported by said heater and independent of the walls of said housing.

[2] 2. In a device of the class described, the combination of a housing having an air inlet and an air outlet, a radiator within the housing having vertical passageways there-through, and a damper positioned between said inlet and outlet and extending to said radiator for deflecting the air downwardly through one part of the radiator and upwardly through another part thereof before it reaches the outlet.

3. In a device of the class described, the combination of a housing having an air inlet and an air outlet, a blower in the upper part of said housing, a radiator in the housing below the blower, said radiator having vertical passageways, an adjustable damper extending upwardly from said radiator into said air out-

The defenses are invalidity and noninfringement.

The device alleged to infringe is a ventilating unit bearing the trade-mark "Heatovent," installed by the defendant in the House of Representatives in the State House at Columbus, Ohio. The District Court found the Hubbard patent valid, but not infringed; that the claims in suit of the Shurtleff patent were not infringed, but made no finding as to their validity. The court further found that the plaintiff's trade-mark, "Univent," was not infringed by the use of defendant's trade-mark "Heatovent," and dismissed the bill of complaint. From the part of the decree finding no infringement, plaintiff appealed, and defendant also filed a cross-appeal from that part of the decree adjudging the claims in suit of the Hubbard patent valid.

The structure of the Hubbard patent is a ventilating unit consisting of a wide casing or housing to be located in front of a window with its back next to the window; an air intake throat connected with an opening below the window sash when raised; a discharge compartment in the front part of the housing between the transversely extending vertical walls; a heat compartment formed back of the discharge compartment in which is located a steam heat or hot water radiator; a blower compartment located above the heater compartment in which is mounted a blower and motor. The motor and rotary parts of the fan blower are mounted upon two plates between which are placed a felt insulating pad, and these plates rest upon another sound insulating pad, upon brackets and arms attached to the top of the radiator. It is claimed that, by reason of

let, said damper in one position causing all the air from the blower to flow downwardly through one part of the radiator and upwardly through another part thereof and through the outlet, and in other positions permitting part of the air to flow directly from said blower through said outlet.

4. In a device of the class described, the combination of a housing having an air inlet and an air outlet at its upper end, a blower chamber between said inlet and outlet and a blower therein for directing air downwardly, a radiator within the housing a distance below said blower, said radiator having vertical passageways there through a damper hinged along the top of said radiator and extending into said outlet, said damper in one position causing all the air from the blower to travel downwardly through part of the radiator and upwardly through another part thereof before it reaches said outlet, and said damper in other positions causing all the air to flow directly from said blower, through said outlet or permitting part of the air to flow from said blower through the outlet.

supporting the motor independently of the housing, this device is practically noiseless, because the vibration of the moving parts of the blower cannot be communicated to the walls of the casing. When in operation, the fresh air is drawn from outside the wall of the building through the intake throat into the blower compartment from which it is forcibly discharged by the blower down through the heating compartment, where it comes in contact with the heater, and then upwardly through the discharge chamber into the room to be ventilated, through narrow elongated air outlets between the upper ends of the walls of the discharge compartment.

The Shurtleff heating and ventilating unit differs from Hubbard, in that the blower and motor are supported upon a sound insulating shelf attached to and supported by the casing and not by the radiator, although it is claimed by counsel for appellant that the radiator supports "the moving parts of the blower through a wall insulating shelf substantially as in the Hubbard unit." It further differs from Hubbard in that the radiator occupies the entire lower compartment and is divided in its middle by a transverse vertical diaphragm or wall which provides two vertically extending passageways through the radiator; one leading downward from the air intake side of the casing and the other leading upwardly toward the discharge outlet. When in operation, the air is drawn by the blower through the air intake, and then driven downwardly through a vertical space on that side of the radiator, and then upwardly through another vertical space on the other side of the radiator to the discharge outlet. A damper is hinged to the top of the radiator on a line in the plane of the dividing wall and positioned between the air inlet and the air outlet of the housing for controlling the flow of air with reference to the radiators. When this damper is in closed position relative to the inlet and outlet, the air is forced through both sides of the radiator before it is discharged. If in closed position relative to the intake and heating compartment, the air is short circuited, and comes in contact only with the top of the front side of the radiator before being discharged through the outlet. If it is placed in intermediate position, part of the air will pass through both sides of the radiator, and part will pass directly to the outlet.

The structure of the defendant that it is claimed infringes the claims in suit of both of these patents is also a single ventilating

unit, consisting of a casing or housing with intake, outlet, heater, and blower. The blower is positioned to the front of the casing near the outlet, and sucks the air through the intake and the heating compartment, and then forces it through the outlet. The casing of the fan is attached directly to the sides of the housing, and further supported on a cushioned sound insulating shelf mounted on the front half of the radiator.

The radiator occupies the entire heating compartment, and the heating pipes are staggered so that the air in passing through does not move in straight lines or through any passageway provided for that purpose, but in curved or zigzag lines through the spaces between the staggered heating pipes.

The radiator of the defendant is divided midway between the upright walls of the housing by a partition plate, and the part of the radiator in front of this plate is considerably higher than the part of the radiator to the rear and nearest to the air intake. The air outlet is located at the upper front side of the housing. A mixing damper is pivotally attached to the partition plate, and, when closed, connects at both ends with this plate, and forms a part thereof. When in this position, all of the air coming through the intake passes through the heating compartment and around the pipes of the heating unit. When this damper is swung so that its upper end contacts with the outer rear wall of the casing, the air passes directly through to the outlet, contacting only with the upper part of the front section of the radiator. When in intermediate position, part of the air passes downward through the radiator, and part passes through the upper part of the front section of the radiator to the outlet.

Dampers are also attached pivotally to the rear walls of the casing for controlling the amount of air that may be admitted through the intake.

Counsel for appellant vigorously insists that the trial court was in error in holding that the patents to Hubbard and Shurtleff are in a crowded art, but, upon a careful examination of this record, we have reached the same conclusion.

[1] The statements published by the appellant in its advertising circular, under the title "Evolution of Ventilation," are sufficient to show that Hubbard's patent is not generic or entitled to any broad range of equivalents. For this reason, the rule as to equivalents stated in Russell Grader Mfg. Co. v. Zeig Mfg. Co., 259 F. 575, 577, 171 C. C. A. 33, applies to the facts of this case.

Hubbard does not claim that he has invented a ventilator unit, but, on the contrary, "new and useful improvements in ventilator units." Shurtleff declares that his invention relates to heating and ventilating units, and particularly to that class in which the heat radiator and a blower are inclosed in a housing for connection with the outside air and having a discharge opening in the room to be heated and ventilated, and calls particular attention to the defects in some of these prior art devices. It is also claimed on the part of the appellant that these ventilating units must not be confused with heating apparatus, for the reason that they are in a separate art. Hubbard specifically states that his device is intended also for industrial uses such as drying operations, the support of combustion, and the like, but that the embodiment of his invention which he has chosen for clear illustration of the principles involved is designed more especially for supplying fresh heated air to rooms of buildings. Shurtleff very frankly states that his claimed invention is for both a heating and ventilating unit "having a discharge opening into the room to be heated and ventilated." It is apparent from the evidence that heating and ventilating are not merely allied arts, but substantially the same art, and that the devices of the patents in suit are intended, and may be made, to answer either purpose, although the preferred form of Hubbard may be more specifically intended for a ventilating unit.

It is wholly unnecessary to review the prior patent art. It is sufficient to say that, if there is anything new in Hubbard, it consists in the blower being supported by the heater and independent of the walls of the housing. If nothing else appeared in this record except the McPhee British patent, claim 4 of Hubbard would be invalid for want of novelty and invention. It is claimed that McPhee is of the central fan type, but McPhee specifically states the purpose of his invention is to provide a simple and inexpensive self-contained apparatus to heat, cool, or ventilate the compartment or compartments with which it is connected. It is therefore apparent that his invention contemplates a single ventilating unit to ventilate one compartment, but by providing additional outlets it may be used to heat, cool, or ventilate two or more.

[2] Claims 11 and 19 are substantially alike, except that 19 also includes "a heater mounted therein and supported independent of the walls of said housing." We do not think this feature, standing alone, would amount to

invention, even if novel, but it is entitled to some consideration in connection with his claim that, by supporting his blower on the heater and independent of the walls, his device is practically noiseless. This is the sole purpose sought to be accomplished by Hubbard by his arrangement of elements old in the art. Whether this claim rests in theory only, or is an advance over the prior art, need not now be decided. It is sufficient to say that the fan case of the alleged infringing device is attached to and supported by the sides of the casing, and, although the base also rests on part of the heater, the advantage claimed by Hubbard is wholly absent from the defendant's structure, or at least reduced to the vanishing point by reason of the fact that the noise made by the moving parts of the motor and fan are directly communicated to the fan casing and through it to the walls of the outer casing or housing. The use of felt or cork pads as sound insulators is old, not only in this art, but in every other art in which the deadening of sound is desirable.

[3] It is claimed on the part of the appellee that the Hubbard device lacks utility, and for that reason the defendant abandoned it for the double radiator of Shurtleff. While the appellant admits that it has discontinued the manufacture of the Hubbard device, it insists there is no evidence of lack of utility, and that it is entitled to protection if it had never manufactured any devices of this patent. This is a correct statement of law, but there is a substantial difference between the failure to manufacture or the mere discontinuance of manufacture and abandonment because the device lacks utility. It appears from the circulars and advertisements issued by the appellant that it has not only abandoned Hubbard for lack of utility, but has publicly stated in the advertising pamphlet to which reference is above made the reasons why it lacks utility. Houston v. Brown Mfg. Co. (C. C. A.) 270 F. 445. Wholly apart from this consideration, however, we have reached the conclusion that defendant's device does not infringe claims 11 or 19 of the Hubbard patent when construed in reference to the specifications and to the full extent of any possible advantage or utility afforded thereby.

Shurtleff, in so far as the claims in suit are concerned, does not materially differ from Hubbard except in the design of his radiator and the addition of a damper to control the direction of the air. What has been said in reference to claim 4 of the Hubbard patent applies with equal force to the Shurtleff

combination. Clearly in this respect there is no advance over Hubbard, and the difference, if any, must be found in the special features of Shurtleff above mentioned, and not in the combination or arrangement of parts. It is not claimed that defendant infringes the specific design of Shurtleff's radiator. Therefore, the only remaining question is whether the damper of Shurtleff is new to the art, and, if so, does the defendant infringe.

The record discloses that there is nothing new in Shurtleff's damper or the purposes for which it is used. It is unnecessary to cite more than Geissinger 1,144,032 and the Peerless Waterbury unit installed in 1917 in the Webster Public School at Waterbury.

The claim that Geissinger relates to a central fan system does not in any way avoid the citation. It is apparent that many, if not all, the elements of the central system have been incorporated into the single ventilating or heating unit. Whether Geissinger has a plurality of outlets, or only one, it is nevertheless in the prior art, and must be accepted for what it teaches.

It is said, however, that in Geissinger and the Peerless Waterbury unit the cold air passes directly from the inlet to the outlet without being tempered by contact with any part of the heating element, and that in Shurtleff's it comes in contact with the top of the front half of the radiator, and is somewhat tempered before it reaches the outlet.

The claims in suit do not refer to any such contact of the air with the top of the front half of the radiator, but, on the contrary, the language is "causing all the air to flow directly from said blower through said outlet."

It would further appear that this contact of the current of air with the top of the radiator would not temper it to any substantial degree, particularly when its movement is accelerated by the blower. On the contrary, it is clear that Shurtleff contemplated the tempering of the air that passes into the room, not by contact with the top of a portion of his radiator, but by positioning his damper so that part of the air may pass through the radiator and part directly from the intake to the outlet.

In the claimed infringing device, the front half of the radiator extends up into the discharge compartment to such an extent as to be substantially effective in tempering the air passing directly from the inlet to the outlet, and this, no doubt, suggested that the top of the front half of the Shurtleff radiator might have a like effect, for it does not

appear to have been within the contemplation of Shurtleff when his specifications and claims were written, nor when he was seeking to avoid the patent office citations.

[4] Upon the question of the infringement of appellant's trade-mark it appears that the products of both appellant and appellee bear the corporate name and address of each. No evidence was introduced tending to show any confusion on the part of the purchasing public. While the words are somewhat similar in character, yet there is no reason why one should be mistaken for the other, particularly in view of the fact that there are a number of other trade-marks, some of them, at least, older than appellant's, and used upon the same character of products that are equally as similar to the appellant's, such as Sturtevant, Autovent, and the like.

For the reasons stated, that portion of the decree of the District Court to which the appeal of the Herman Nelson Corporation is directed is affirmed, and upon the questions presented by the cross-appeal the decree of the District Court is reversed as to claim 4 of the Hubbard patent and affirmed as to claims 11 and 19.

Costs in this court are adjudged against the appellant in cause No. 4379, and in cause No. 4348 each party will pay its own cost in this court. The cause out of which these appeals arose is remanded to the District Court, with direction to modify its decree in conformity with this opinion.