**BUCKEYE BLOWER CO. v. ARENSMEYER, WARNOCK & ZAHRNDT, Inc.**

District Court, W. D. New York. August 22, 1928.

Haight, Adcock & Banning, of Chicago, Ill., for defendant.

HAZEL, District Judge. This is a suit for infringement of a patent issued to Joseph E. McGuinness on March 13, 1917, No. 1,218,880, for heating apparatus, having relation to so-called indirect heating apparatus, commercially known as a unitary heating and ventilating apparatus, for use in buildings, generally schools, hospitals, hotels, or other public buildings. Plaintiff acquired the patent by purchase. It is constructed in compact, portable form of sheet iron, manufactured at the factory and transported directly to the place of installation, and there connected to steam pipes or ducts in the building. Its object or purpose is to constantly renew the air in the room for ventilation, to eliminate drafts, and provide instrumentalities for regulating the apparatus to secure constant, even temperature, regardless of the external temperature. It comprises a heating apparatus for for passing air currents from outside the building or outside the apparatus, either over, through, or around a sectional radiator, placed in series and connected to each other in the center of the apparatus, to increase the air temperature. All the elements of construction are inclosed in the metallic casing, which has an inlet chamber through which the fresh, outside air is pumped or blown upwards, by a blower set on the floor, through an opening into a chamber under the radiator, and, after being tempered or warmed by passing over the radiator or around it by way of by-passages or channels adjacent to the radiator, mixes with cold air, which flows up the by-passes on the sides of the radiator, and then exits at a discharge opening. Regulation or control of the by-passes is secured by means of a single handle, which may be used to turn the heated or partly heated air into the room, or turn the cool or partly cooled air into it. The course of the channels or by-passes over and around the radiator, with the aid of curved plates which deflect the currents of air, enables mixing the air at the top space of the casing, together with a perforated plate or perforated wall 15, which retards the air flow by spreading, and secures a thorough commingling to attain a uniform temperature before it is discharged.

There are interconnecting sets of dampers or valves (horizontal and vertical) in the chamber underneath the sectional radiator, one set being used to control the air

H. A. Toulmin and H. A. Toulmin, Jr., both of Dayton, Ohio, and A. J. Adler, of Buffalo, N. Y., for plaintiff.

opening over or between the radiator, and the other to control the air opening around the radiator at passageways *21*, to aid in obtaining the desired temperature or even outflow of air. Efficient tempering of the air within the casing is obtained by the constant damper control by a single handle; that is, partially closing one set, over openings of the same size, partially opens the other set, and thus a desired balance or evenness of temperature is secured throughout the room. The blower is mounted on the floor of the casing or a bracket contained therein.

The specification says: "Briefly stated, my improved heating and ventilating apparatus comprises a casing or jacket to be located in any suitable place in or on the walls or floors of a building and provided with communication to the air outside of said building, and also to the room or space to be heated and ventilated, and within which casing or jacket are located one or more radiators and an air fan or pump for circulating the air over or around the radiators into the room."

The heating of a single room is contemplated by the specification; each unit having separate control for diverting the cold air through side by-passes, and then, in a space above the radiator, commingling both hot and cold air for distribution. All the claims, which are for combinations, whether in terms broad or specific, are involved. It will suffice to set out claims 1 and 2, and make summary references to the others.

Claim 1: "A unitary heating and ventilating apparatus, comprising a housing having an inlet opening adjacent its bottom and a discharge opening near its top, heating radiators located at an intermediate point within said housing and arranged so that air may be forced through and over the same, said housing being provided with passages around the radiators, means within the housing arranged to draw air from the inlet opening and force it over the radiators and through the passages to the discharge opening, means for controlling the passage through and over the radiators, and means for controlling the entrance to the passages around the radiators, both of said latter controlling means being operable in unison, whereby the relative flow of air over the radiators and through the passages may be regulated."

Claim 2: "A unitary heating and ventilating apparatus, comprising a housing having an inlet opening near its bottom and a discharge opening adjacent its top, heating radiators located at an intermediate point within said housing within a passage therein, a series of horizontally located dampers controlling the entrance to said passage, said housing being provided with a plurality of passages around said radiators, a plurality of vertically located dampers for controlling the entrance to said last named passages, all of said dampers being arranged to be operated in unison, whereby the relative flow of air over and around the radiators may be regulated."

The other claims do not mention a unitary structure, but claims 3 and 4 specify two sets of dampers, operating in unison, one for regulating and controlling the passages around the radiator, and the other the passway between the radiator. Claim 5 is similar to claim 3, but includes the element of a perforated wall or plate for retarding the air flow to produce an even temperature; while claim 6 is substantially the same as claim 4, with the addition of a perforated wall or plate.

The defenses are noninfringement and invalidity. These defenses are admittedly interposed by the Herman Nelson Corporation, the manufacturer of defendant's structure, which has intervened herein. It may, therefore, together with Arensmeyer, Warnock & Zahrndt, Inc., be regarded as an actual defendant.

In support of the defenses, it is argued that the exhibit heater manufactured and sold by plaintiff is essentially different in construction from the description contained in the McGuinness patent; that the heater in question is of the same classes or types of heaters known as the central fan heater and unitary heaters and ventilaters, both old and in extensive use; and, further, assuming validity of certain of the claims, they are limited to details of construction only, while other claims embody unwarranted limitations.

The old central fan system consisted of apparatus wherein blowers, fans, ducts, and distributing pipes were incased, and in which the apparatus was located in the cellar of the building to be heated, or heated and ventilated. Often much space was required in its installation. The pipes extended through the walls of the building to rooms where the air was discharged through grills. This device was not only expensive in construction and maintenance, but was objectionable on account of drafts and inability to control the hot-air temperature. Not infrequently the direction of the wind from one side of the building made it dif-

ficult, if not impossible, to provide uniform heating. The system was operated as an entirety, and resulted in unequal distribution of heat and ventilation, besides requiring, in most instances, an employee to tend it. Moreover, it either lacked satisfactory means of control or regulation of pressure or distribution of the air, or the pressure was disturbed.

The patentee's object was to improve such earlier devices, and adapt them more particularly to use in schoolrooms or other large buildings. He provided a mixing chamber and regulation dampers, which, when rightly set, allowed cold air to pass through the side passages in the apparatus and mix with hot air at its upper end before discharging, thereby securing a constant, even temperature. This achievement was due to a separation of the cold air flow, which, upon entering the casing, was diverted to the lateral by-passes, and thence to a perforated plate at the point of outlet.

Various patents of the known central fan type were cited by the Examiner in the Patent Office when application for patent was filed, and were found by him to be patentably different from the McGuinness invention in suit. The presumption arising from the grant of the patent was strengthened by their consideration, and the evidence to overcome the presumption must be convincing.

The central fan system and the unit system, I think, may be properly considered to be of the same art as the patent in suit. Indeed, in Nelson Corp. v. Columbus Heating & Ventilating Co., 11 F.(2d) 273, the Circuit Court of Appeals for the Sixth Circuit ruled that patents of the unit type and of the central fan type are not separate or distinctive in testing validity. Inasmuch as claims 1 and 2 only are limited to the unit type of heater, it may fairly be inferred that the patentee, by the claims not so limited, had in mind including any heating apparatus adopting his combinations. Although numerous prior patents were cited, either in anticipation or limitation of the claims, and evidence adduced in relation thereto, it will be enough to treat of those only, which defendants concede were the closest approaches to the McGuinness invention.

The Barbour patent was for drying leather in tanneries, and shows controlled cold-air passages, a radiator in the center of the housing, valves at the opening of two by-passes, and a cold-air pass around the radiator, together with a heating space for delivering air to the radiator or to the cold by-passes. This patent, however, is essentially different from McGuinness, in that the set of valves or gates are not interconnected either for cold-air modification or mingling the two streams over the radiator. They are independently operated, and the device does not operate upon the principle developed by McGuinness.

The Powers patent, No. 558,610, of the central type, embodies a radiator chamber, interconnected valves operating in unison at the by-pass outlet ends. It has several of the elements of the patent in suit, and by a few modifications may be made adaptable for heating a single room or apartment; but it lacks the co-ordinating parts for admixing the streams of air over the radiator for distribution, and has neither a fan in the casing nor a blower on the floor, while its damper does not control the hot air independently of the cold air. It is distinctively a cellar apparatus, and one that is incapable of imparting a suitable air balance. It is not anticipatory, although it bears strongly upon the scope of the claims.

The prior patents to Keith, Titus, Borream, and Hubbard were each heater constructions in cabinet form and could be used in a single room, thus showing that McGuinness was not the first to provide for cabinet heating in the separate room or apartment. These earlier unitary systems, however, did not embody the combination of the claims in issue. Keith was without a blower, or interconnecting dampers, or mixing chamber, or perforated plate or wall for mixed hot and cold air distribution. Titus has a refrigerate cooler in the casing for cooling the air, and does not include interconnecting dampers, or intermediate radiator in the casing, and lacks the co-ordination of essential parts upon which the success of the McGuinness invention, for use in schoolrooms, for example, depended. The Hubbard patent has no by-pass for cool air entry into the room, no interconnecting dampers, and was noisy, even though there were specified means for lessening the noise; while McGuinness eliminated noise by placing the motor and blower on the floor of the cabinet or on a bracket. In none of the cited prior patents or publications are found the improvement or the elements in combination to achieve the result of the patent in suit.

 Plaintiff rightly asserts that McGuinness was the first to combine the elements in a casing, a unit with an outlet in the bottom, and an outlet at the top, with in-

strumentalities at the upper end for mixing the air, of several by-passes for hot and cold air, to enable the currents to commingle in a chamber above the radiator before discharge. His principle of operation was, however, to be consummated in a specific and definite way. The prior art was such that a liberal scope of the claims, to include devices operating differently, cannot be accorded. The elements in combination claims in their entirety are material in considering whether a defendant's device is an infringement. The specification and drawings are keys to construction and define the claims. The described mode of operation cannot expand the claims to include a device which does not substantially embody the combinations for reaching the result, for it is well settled that infringement of a mechanical structure is not proven, if parts only of a patented combination are found in the alleged infringing machine. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co. (C. C. A.) 106 F. 693; American Fur Refining Co. v. Cimiotti Unhairing Mach. Co. (C. C. A.) 123 F. 869. It is therefore important to ascertain whether defendants, by their omission of certain parts or elements, or by a different arrangement of those parts or elements, avoided infringement, or whether in its variation it has supplied equivalent means or details by which substantially the same result is obtained. If one element of the combination has been omitted, and a different operation is effected, a defendant does not infringe. Keystone Lantern Co. v. Spear (C. C. A.) 136 F. 595; Mallon v. William C. Gregg & Co. (C. C. A.) 137 F. 68.

Defendants' apparatus is of the unitary type, consisting of a metallic casing much like Plaintiff's Exhibit No. 4, with an air inlet at the bottom and a single air discharge opening at the top, a radiator located a short way from the center line of the casing between the blower and chamber over the radiator. Hot air passes through the radiator, while the cold air by-pass is at the back, adjacent to the cabinet wall, and not at the side or sides of the radiator. It has no cold-air passways, one on each side of the radiator, for forcing air through the passages. It has no means for adjusting or controlling the entrance openings around the radiator, as has McGuinness in chamber 11 underneath the radiator. It is without a perforated plate or wall in a chamber over the radiator, for retarding the air stream or spreading it uniformly. It has no curved plate at the upper end of its single channel or by-pass to deflect the cold air inwardly, or toward the stream of hot air, for thoroughly mixing the two streams before discharge, as specified in the patent in suit. There are not two sets of dampers, either under the radiator or above it, in defendants' apparatus, for controlling and adjusting the entrance passages, one for the current of air between the radiators and the other set for around the same. Defendants' damper leaves are at the top end of the single cold-air by-pass which controls the streams, without, however, diverting the cold air for the purpose of commingling it with the hot air before leaving at the outlet. Both streams leave the device vertically, but at times there is incidental mixing inside the apparatus, owing to temperature variation. There are no dampers to control the entrances to the radiator passage, or series of vertically arranged dampers to control the entrance thereto, as in plaintiff's patent. The specified changes in defendants' structure were substantial, and, I think, resulted in a different mode of operation.

Plaintiff's chief engineer, Hartnett, who designed the Plaintiff's Exhibit apparatus No. 4, testified, in explanation of the absence of the perforated plate or wall, that its omission was merely a matter of detail, and was designed to lessen the cost of manufacture; that defendants' mixing chamber was in the form of a plate, and that the volume of air coming up through the single by-pass would equal the volume coming up through two by-passes; that the air turns at right angles and mixes, even though it does not come up from two sides; and that defendants' grill gives an outlet velocity of such character that the resistance is equal to the function of the perforated plate; and, moreover, that one by-passage functions the same as two, and accordingly it was unnecessary to have the sets of dampers at the bottom of the radiator. But such alterations were not, in my opinion, within the contemplation of the patentee. It was not his conception. His idea was to secure good distribution of air into a room by a different plan—a plan that has not been embodied in plaintiff's heater, Exhibit 4, in evidence. ██ It is true, as contended, that ordinarily joining two elements in one integral part accomplishing the object of both will not avoid infringement, as ruled in Barber v. Otis, Motor Sales Co. (C. C. A.) 240 F. 723; yet, when the intention of the inventor is to accomplish the purpose (of thoroughly mixing the air) by two parts which

are to co-operate with other elements to attain a definite result—one that is attainable only by such double parts in co-operation with the others—then the use of one part (a single by-pass) which functions differently is not the equivalent of the two. Other claimed features and advantages of the McGuinness patent were discussed, but, in view of the conclusions reached as to noninfringement, they need not be particularized.

My summary conclusion is, as already indicated, that claims 1 and 2, which must be limited in their application, are not infringed by defendants' apparatus. Claims 3 and 4 likewise are not infringed, since they are limited to the forcing of cold air into the side passages, using two sets of dampers, one to control the flow between and the other around the radiators. Claims 5 and 6, dealing with the instrumentalities for retarding and mixing the air, employing two sets of dampers for use, as stated in claims 3 and 4, are not infringed by defendants, who, in their heater, do not use such instrumentalities.

Decree for defendants, with costs.