05-4002-cv
Caiozzo v. Koreman

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: October 24, 2008      Decided: September 22, 2009)

Docket No. 05-4002-cv

--------------------------------------

ANTHONY CAIOZZO, as Administrator of the Estate of Phillip Caiozzo,

Plaintiff-Appellant,

- v -

BRIAN KOREMAN, MICHAEL BENEDETTO, ANTHONY CRISORIO, MICHAEL MOFFRE and GORDON C. RIVERS,

Defendants-Cross-Claimants,

JACK BEVLICOLA and VINAY B. DAS, M.D.,

Defendants-Cross-Defendants,

LINDA CUMMINS, R.N.,

Defendant-Cross-Defendant-Appellee.

--------------------------------------

Before:    SACK, KATZMANN and KELLY,[*] Circuit Judges.

Appeal from a judgment of the United States District Court for the Northern District of New York (Gary L. Sharpe, Judge). We reaffirm our position, stated in Arroyo v. Schaefer, 548 F.2d 47, 50 (2d Cir. 1977), that the standard for analyzing a claim of deliberate indifference to the health or safety of a

---

[*] The Honorable Paul J. Kelly, Jr., of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

convicted prison inmate held in state custody as a violation of the right of the inmate to be free from cruel and unusual punishment under the Eighth Amendment is also applicable to claims brought by pretrial state detainees under the Due Process Clause of the Fourteenth Amendment. In light of the Supreme Court's subsequent holding that a subjective standard is to be applied in the Eighth Amendment context, under which a defendant is liable only if he disregards a risk of harm of which he is aware, Farmer v. Brennan, 511 U.S. 825, 837 (1994), we conclude that the subjective standard also applies in the Due Process context. Contrary to our case law prior to the Supreme Court decision, the question of fact before the district court was therefore whether the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Id. at 837. There is no evidence in the record on appeal from which a reasonable juror could conclude in the affirmative.

Affirmed.

CHAD A. JEROME, The LaFave Law Firm, PLLC (Lawrence J. Zyra, of counsel), Delmar, NY, for Plaintiff-Appellant.

TIMOTHY S. BRENNAN, Phelan, Phelan & Danek, Albany, NY, for Defendant-Cross-Defendant-Appellee.

SACK, Circuit Judge:

In Farmer v. Brennan, 511 U.S. 825, 837 (1994), the Supreme Court held that a subjective test adapted from the criminal law applies to suits against federal prison officials for violating a convicted inmate's right to be free from cruel or

2

unusual punishment under the Eighth Amendment.  In the wake of Farmer, such a defendant is liable to an injured prisoner only if he "disregards a risk of harm of which he is aware," id. at 837, and that causes the injury.  Prior to Farmer, we had held that deliberate indifference claims brought by pretrial detainees in state facilities under the Due Process Clause of the Fourteenth Amendment were to be analyzed under the same test as Eighth Amendment claims by inmates who stood convicted.  See, e.g., Arroyo v. Schaefer, 548 F.2d 47, 50 (2d Cir. 1977).  In the pre-Farmer cases, however, the test we employed was objective, that is, it could be met without proof as to the state of mind of the defendant.  We asked whether there were "circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control or dependent upon him."  Id. at 49 (internal quotation marks omitted).

In light of Farmer, we must decide which of two lines of our case law to follow -- our prior Fourteenth Amendment Due Process Clause jurisprudence, which permitted liability for abuse of pretrial state detainees if the more easily met objective test alone was met, or our prior decisions concluding that Fourteenth Amendment due process cases brought by state pretrial detainees should employ the same standards as Eighth Amendment cruel and unusual punishment cases brought by convicts, now clearly a

3

subjective standard.  We adhere to the latter line of authority.[1] Following the lead of our sister circuits that have addressed this question, we conclude that in Fourteenth Amendment deliberate indifference claims brought by pretrial detainees in state custody, the subjective standard is to be applied. Applying it, we affirm the district court's grant of summary judgment to the defendant.

**BACKGROUND**

Because summary judgment was granted against the appellant, the administrator of the estate of Phillip Caiozzo ("Caiozzo"), we consider the evidence in the light most favorable to him.  See, e.g., Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 94 (2d Cir. 2000).  At approximately 9:49 a.m. on July 11, 2001, Caiozzo was arrested by an Albany police officer and charged with first degree harassment.[2]  Following his arraignment in Albany City Court, he was committed to the custody of the Albany County Sheriff, who transferred him to the Albany County

---

[1]  Because this decision effectively overrules prior decisions of this Court, it has been circulated to all the active judges of the Court before filing.  See, e.g., Slayton v. Am. Express Co., 460 F.3d 215, 228 n.13 (2d Cir. 2006).

[2]
> A person is guilty of harassment in the first degree when he or she intentionally and repeatedly harasses another person by following such person in or about a public place or places or by engaging in a course of conduct or by repeatedly committing acts which places such person in reasonable fear of physical injury.

N.Y. Penal Law § 240.25.

4

Correctional Facility ("ACCF") at around 6:45 p.m. Caiozzo had previously been incarcerated at the ACCF on at least twenty-seven separate occasions, and had been treated for chronic alcoholism by the facility's medical staff. On this occasion, the ACCF booking officer recommended that Caiozzo be placed under intensive observation because he appeared intoxicated. Caiozzo was then sent to the medical department, where the nurse on duty, Defendant-Appellee Linda Cummins, R.N., performed an intake medical assessment at around 7:30 p.m. Vinay B. Das, M.D., was the doctor on call at that time.

The ACCF intake assessment consists of obtaining information from the detainee by asking a standardized list of questions. The nurse is required to make several specific observations, including whether the detainee is conscious, shows signs of injury or illness, or has visible signs of fever. The nurse is also required to assess any signs that the detainee is at risk of suicide, assault, or abnormal behavior.

In her intake assessment of Caiozzo, Cummins took his vital signs, which were within normal limits. Caiozzo was able to answer her questions and to sign the intake form. Cummins noted that Caiozzo exhibited abnormal behavior and smelled of alcohol, and that he stated that he was "possessed." Caiozzo also told Cummins that he wanted to go to sleep because he was tired. He reported that he had been hospitalized during the preceding year. Caiozzo had a history of psychiatric treatment

5

and mental problems that the appellant asserts were related to alcohol abuse.

Caiozzo told Cummins that he consumed alcohol daily. Cummins then asked when he had had his last drink. Cummins' notes indicate her understanding, based on Caiozzo's response, that his last drink had been in the early evening of that very day, July 11. It now appears that this was not the case, and that Caiozzo meant to refer to the previous evening. Cummins' understanding corresponded with the booking officer's observation, of which Cummins was aware, that Caiozzo appeared intoxicated when he was booked at 6:45 p.m.; it also corresponded with her own observation that his breath smelled of alcohol. The appellant argues that Cummins should have realized that it was not possible for Caiozzo to have consumed alcohol earlier that same evening, since he had been arrested that morning and had been in custody ever since. While the appellant acknowledges that Cummins was unaware of this chronology, he asserts that with proper diligence, Cummins would have uncovered this information. The timing of a detainee's last drink is important in assessing the need for and timing of alcohol withdrawal treatment.

At the end of her assessment, Cummins concluded -- erroneously, as it turns out -- that Caiozzo was under the influence of alcohol. She placed him under continual observation, which was consistent with the booking officer's recommendation.

That evening, two corrections officers were assigned to monitor five inmates, including Caiozzo. The officers kept the inmates under continual observation and recorded their observations in a log book at approximately 15 minute intervals. At about 10:15 p.m., Cummins received a call from the officer monitoring Caiozzo, who stated that Caiozzo was yelling and acting irrationally. Cummins came to his cell, where Caiozzo told her that he was going to go through alcohol withdrawal. Cummins noted in her medical chart: "[S]tates will be having withdrawal from alcohol." Cummins did not enter the cell, examine the decedent, or ask him any questions, any or all of which might have led her to observe alcohol withdrawal signs and symptoms such as incoherence, tremors, or sweating.

Cummins called Dr. Das and reported Caiozzo's signs and symptoms as she had observed them. Based on her earlier misinterpretation of Caiozzo's statement, she told Das that Caiozzo's most recent drink had been earlier that evening. She also told Das that Caiozzo was intoxicated, noting that he was speaking irrationally to himself, and was behaving erratically and apparently had mental health problems. Das indicated that Caiozzo should be kept under constant observation, that Das would follow up first thing in the morning, and that Das would start an alcohol withdrawal protocol at that time, if necessary.

Cummins did not receive any further calls from the observing officer between 10:15 p.m. and 2:45 a.m. During that time period, the officer assigned to monitor Caiozzo, defendant

7

Koreman, did not notice Caiozzo shaking, trembling or sweating. Neither did he observe any unusual behavior by Caiozzo, who appeared to be awake on and off. Caiozzo vomited once in his toilet, but aside from that, he did not seem to Koreman to be in medical distress.

At approximately 2:50 a.m., Caiozzo appeared to Koreman to have "some sort of spasm," after which Caiozzo rolled out of bed. Koreman asked Caiozzo if he was all right. He did not respond. Koreman yelled to the other officer to summon medical help and opened the cell to check on Caiozzo, who appeared to be breathing.

The ACCF medical unit was informed that Caiozzo had fallen out of bed and was not moving. Another officer, defendant Michael Benedetto, entered the cell and found that Caiozzo was breathing and had a pulse. The officers continued to monitor him until a nurse, Ann Curtis, arrived shortly thereafter. Curtis examined Caiozzo and found that he was not breathing. Cardio-pulmonary resuscitation procedures were begun. Cummins was called to assist. She furnished oxygen and other emergency equipment. CPR was applied pending the arrival of the Emergency Medical Service at 3:15 a.m. EMS then took over the treatment. At the time, Caiozzo had a pulse of 60 beats per minute and blood pressure of 70 over 30. He was taken to Albany Medical Center.

Later that day, having been removed from life support, Caiozzo died. His death was ascribed to seizure due to acute and chronic alcoholism.

8

On March 12, 2003, Plaintiff-Appellant Anthony Caiozzo, as administrator of Caiozzo's estate, instituted this action in the United States District Court for the Northern District of New York pursuant to 42 U.S.C. § 1983, alleging various constitutional violations by various defendants. At the close of discovery, the defendants moved for summary judgment. At that time, the plaintiff voluntarily withdrew his claims against all of the defendants except for Cummins and Das, and withdrew certain of his constitutional claims as against them. The remaining claims against Cummins and Das were for deliberate indifference to Caiozzo's medical needs in violation of his rights under the Eighth and Fourteenth Amendments.

At the conclusion of oral argument, the district court (Gary L. Sharpe, Judge) granted Das' motion for summary judgment, but reserved judgment on Cummins' motion and requested further briefing on the question of whether an "objective" or "subjective" standard should be applied. Following the additional briefing and further oral argument, the court applied the subjective test, under which a defendant is liable only if he "disregards a risk of harm of which he is aware," Farmer, 511 U.S. at 836-37, and granted summary judgment dismissing the plaintiff's claims against Cummins. The court stated: "I believe this decision is generated from the decision as to what standard applies, the objective one or the subjective one." Hearing Tr., May 19, 2005 ("May Tr."), at 11.

The plaintiff does not contest the grant of summary judgment to Das.  The sole issue on appeal is the district court's decision to grant Cummins' motion for summary judgment on the claim of deliberate indifference to the medical needs of a pretrial detainee.  The plaintiff argues that the objective test should be applied, and that even under the subjective test, summary judgment should not have been granted.

We agree with the district court that the subjective test applies and that no reasonable juror could conclude that Cummins' behavior met that test.  We therefore affirm the judgment of the district court.

**DISCUSSION**

I.  Standard of Review

We review the district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party.  Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008).  "[W]e are 'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"  Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003).  Whether to apply the subjective or objective standard is a legal question that we also review de novo.  See Guiles ex rel. Guiles v. Marineau, 461 F.3d 320, 323-24 (2d Cir. 2006).

II.  Applicable Substantive Standard

A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed

10

under the Eighth Amendment[2] because the right the plaintiff seeks to vindicate arises from the Eighth Amendment's prohibition of "cruel and unusual punishment." Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). In the case of a person being held prior to trial, however, "the 'cruel and unusual punishment' proscription of the Eighth Amendment to the Constitution does not apply," because "as a pre-trial detainee [the plaintiff is] not being 'punished,'" Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000); see also Weyant, 101 F.3d at 856. Instead, a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody, or the Due Process Clause of the Fourteenth Amendment if held in state custody. Compare Cuoco, 222 F.3d at 103, 106 (applying Fifth Amendment to a federal detainee), with Liscio v. Warren, 901 F.2d 274, 275-76 (2d Cir. 1990) (applying Fourteenth Amendment to a state detainee). While the plaintiff identified causes of action for deliberate indifference under the Eighth, Fifth and Fourteenth Amendments, the district court correctly concluded that a claim for indifference to the medical needs of Caiozzo, as a pretrial detainee in state custody, was properly brought under the Due Process Clause of the Fourteenth Amendment. See May Tr. at 3.

---

[2] In the case of a state prisoner, it is the Eighth Amendment as applied to the States by the Fourteenth Amendment. See, e.g., Olivier v. Robert L. Yeager Mental Health Ctr., 398 F.3d 183, 191 n.7 (2d Cir. 2005).

11

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court addressed the question of whether to use a "subjective" or an "objective" standard in determining deliberate indifference in the context of a convicted prisoner's rights under the Eighth Amendment, see id. at 837-38. The Court noted that "[w]ith deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." Id. at 836. But this did not resolve the question, because there are two legal tests for recklessness: the civil-law objective test, under which a defendant is liable if he "fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known," and the criminal-law subjective test, under which a defendant is liable if he "disregards a risk of harm of which he is aware." Id. at 836-37. The Court concluded that the subjective test should apply under the Eighth Amendment because it prohibits cruel and unusual punishment, and a prison official's action or inaction cannot properly be termed "punishment" of the detainee if the official was not actually aware of an excessive risk to an inmate's health or safety. See id. at 837-38.

We have not decided which standard to use when a claim of deliberate indifference in violation of the Due Process Clause of the Fourteenth Amendment is brought by a pretrial detainee in state custody. In Benjamin v. Fraser, 343 F.3d 35 (2d Cir. 2003), we noted that "in a challenge by pretrial detainees

12

asserting a _protracted_ failure to provide safe prison conditions, the deliberate indifference standard does not require the detainees to show anything more than actual or imminent substantial harm," id. at 51 (emphasis in original).  But we observed by way of footnote that "[i]n other types of challenges -- for example, when pretrial detainees challenge discrete judgments of state officials -- meeting the deliberate indifference standard _may_ require a further showing."  Id. at 51, n.18 (emphasis added).

Before _Farmer_ was decided, in _Liscio v. Warren_, 901 F.2d 274 (2d Cir. 1990), we applied the objective standard in a case somewhat similar to this one.  There, the state pretrial detainee brought a claim of deliberate indifference, asserting that his alcohol withdrawal was not properly treated due in part to an initial misdiagnosis made at a state detention center.  See id. at 275-76.  We reversed the district court's grant of the defendant's motion for summary judgment, ruling that "[s]ince the medical records indicated that Liscio was a 'poor historian' of his own condition, [the defendant] was on notice that Liscio might be suffering from ailments other than" the ones the plaintiff himself had identified.  Id. at 276.  We also noted that several facts had been elicited that could have led a reasonable juror to find that the defendant should have been aware that Liscio was suffering from alcohol withdrawal.  See id. at 277.  The plaintiff argues that _Liscio_ requires us to apply

13

the objective standard to the case at hand.  If <u>Liscio</u> were still good law, the plaintiff's argument might well be persuasive.

Also prior to <u>Farmer</u>, however, we held that the standard for deliberate indifference is the same under the Due Process Clause of the Fourteenth Amendment as it is under the Eighth Amendment.  <u>Arroyo v. Schaefer</u>, 548 F.2d 47, 49-50 & n.3 (2d Cir. 1977).  In <u>Arroyo</u> we concluded that "[w]hile the Eighth Amendment may not, strictly speaking, be applicable to pretrial detainees," <u>id.</u> at 50, in the context of a claim for deliberate indifference to the medical needs of a state pretrial detainee, the Due Process Clause of the Fourteenth Amendment "requires no more" than the Eighth Amendment does in the case of a convicted prisoner, <u>id.</u> (citation omitted).  And if a defendant prison official in this context is liable for an Eighth Amendment violation only if he "disregards a risk of harm [to a prisoner] of which he is aware" under the Eighth Amendment, <u>Farmer</u>, 511 U.S. at 837, it would seem to follow that a defendant prison official also is liable for a Fourteenth Amendment violation only if he disregards a risk of harm to a detainee of which he is aware.

In the wake of <u>Farmer</u>, we have assumed that our practice of applying the Eighth Amendment deliberate indifference test in cases involving claims brought under the Fourteenth Amendment continues.  <u>See</u> <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 106 (2d Cir. 2000) ("We have often applied the Eighth Amendment deliberate indifference test to pre-trial detainees bringing

14

actions under the Due Process Clause of the Fourteenth Amendment."). Cuoco applied the Farmer standard to a claim of deliberate indifference brought under the Fifth Amendment by a pretrial detainee in federal custody. We see no reason to apply a standard for due process claims brought by state detainees under the Fourteenth Amendment that is different from the one that we employ for due process claims brought by federal detainees under the Fifth Amendment. See Cuoco, 222 F.3d at 106 ("We see no reason why the analysis should be different under the Due Process Clause of the Fifth Amendment [than under the Due Process Clause of the Fourteenth Amendment]."); see also Malinski v. New York, 324 U.S. 401, 415 (1945) (Frankfurter, J., concurring) ("To suppose that 'due process of law' meant one thing in the Fifth Amendment and another in the Fourteenth is too frivolous to require elaborate rejection.").

We think, then, that it is a logical extension of the principles recognized in Farmer that an injured state pretrial detainee, to establish a violation of his Fourteenth Amendment due process rights, must prove, inter alia, that the government-employed defendant disregarded a risk of harm to the plaintiff of which the defendant was aware. Cf. Farmer, 511 U.S. at 837.

Our sister circuits that have examined this question after Farmer have all reached a similar conclusion.[3] As the

---

[3] See Phillips v. Roane County, Tenn., 534 F.3d 531, 539-40 (6th Cir. 2008) (internal citations omitted) (holding that under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee asserting a claim of deliberate indifference to serious

15

Fifth Circuit reasoned in its post-<u>Farmer</u> decision in <u>Hare v.</u>

medical needs must demonstrate both "the existence of a 'sufficiently serious' medical need" and that "'the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk,'" reasoning that this approach "'is meant to prevent the constitutionalization of medical malpractice claims'"); <u>Butler v. Fletcher</u>, 465 F.3d 340, 344-46 (8th Cir. 2006) (holding "that deliberate indifference [which has both an objective and subjective component] is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety"), <u>cert. denied</u>, 550 U.S. 917 (2007); <u>Surprenant v. Rivas</u> 424 F.3d 5, 18 (1st Cir. 2005) (holding, in the context of a claim of unconstitutional conditions of confinement, "the parameters of [a pretrial detainee's Fourteenth Amendment interests] are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment" and that "[i]n order to establish a constitutional violation, a plaintiff's claim must meet both objective and subjective criteria"); <u>Whiting v. Marathon County Sheriff's Dept.</u>, 382 F.3d 700, 703 (7th Cir. 2004) (holding that the question of whether the plaintiff's deliberate indifference claim was based on the Eighth Amendment as a prisoner or the Fourteenth Amendment as a pretrial detainee was "immaterial" since "the legal standard . . . is the same under either"); <u>Olsen v. Layton Hills Mall</u>, 312 F.3d 1304, 1315 (10th Cir. 2002) (internal citation omitted) ("Although '[p]retrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, . . . this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to [42 U.S.C.] § 1983.'"); <u>Brown v. Harris</u>, 240 F.3d 383, 388 (4th Cir. 2001) ("[W]e need not resolve whether [the decedent] was a pretrial detainee or a convicted prisoner because the standard in either case is the same."); <u>Lancaster v. Monroe County, Ala.</u>, 116 F.3d 1419, 1425 & n.6 (11th Cir. 1997) (concluding that "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner" and that the standard is "violated by a government official's deliberate indifference to serious medical needs"); <u>Hare v. City of Corinth, Miss.</u>, 74 F.3d 633, 649 (5th Cir. 1996) (en banc) ("Though <u>Farmer</u> dealt specifically with a prison official's duty under the Eighth Amendment to provide a convicted inmate with humane conditions of confinement, we conclude that its subjective definition of deliberate indifference provides the appropriate standard for measuring the duty owed to pretrial detainees under the Due Process Clause.").

City of Corinth, Mississippi, 74 F.3d 633 (5th Cir. 1996) (en banc):

> [D]espite the distinct constitutional sources of the rights of pretrial detainees and convicted inmates, state jail and prison officials owe the same duty to provide the same quantum of basic human needs and humane conditions of confinement to both groups. . . . That pretrial detainees may have more protections or rights in general . . . does not mean that they are entitled to greater protection of rights shared in common with convicted inmates. For purposes of measuring constitutional duties, our case law and the teachings of the Supreme Court indicate that there is no legally significant situation in which a failure to provide an incarcerated individual with medical care or protection from violence is punishment yet is not cruel and unusual. The fact of conviction ought not make one more amenable under the Constitution to unnecessary random violence or suffering, or to a greater denial of basic human needs.

Id. at 649 (citations omitted; emphasis in original).

We thus reaffirm the position that we expressed in Arroyo: Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment. Because the Supreme Court in Farmer articulated the proper standard for analyzing such claims under the Eighth Amendment -- a standard that we have already applied in Cuoco to a Fifth Amendment due process case -- we adopt that standard in this case under the Due Process Clause of the Fourteenth Amendment.

17

III.  The Standard Applied

There are two elements to a claim of deliberate indifference to a serious medical condition:  "[The plaintiff] must show that she [or he] had a 'serious medical condition' and that it was met with 'deliberate indifference.'"  Cuoco, 222 F.3d at 106.  Here, there is no dispute that Caiozzo had a serious medical condition.  The question is therefore whether a reasonable juror could show that Cummins was deliberately indifferent to that condition, which, under the Farmer test, means that she "kn[ew] of and disregard[ed] an excessive risk to [Caiozzo's] health or safety" and that she was "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . also dr[e]w the inference."  Farmer, 511 U.S. at 837.

Most of the evidence offered by the plaintiff was in support of the argument that Cummins should have been aware that Caiozzo was in immediate danger of alcohol withdrawal.  A reasonable juror might have concluded that this was the case.  There is virtually no evidence, however, to support a conclusion by a reasonable juror that Cummins was actually aware of that immediate danger.  The evidence is clear that she thought, wrongly it turned out, that Caiozzo was intoxicated and therefore not in danger of an imminent severe alcohol withdrawal reaction.  No reasonable juror could conclude that the Farmer test has been met.

18

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is affirmed.