DLD-157                                                                              NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4795
_____

JUAN PAULINO,
Appellant

v.

BURLINGTON COUNTY JAIL; MR. COLE, WARDEN;
MR. CAPT. ARTIST, ACTING DEPUTY WARDEN;
MS. CAPT. SCHOLTZ, CHIEF OF SECURITY;
J. CAIN, OFFICER; DR. EDWARDS
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-07-cv-05315)
District Judge:  Honorable Robert B. Kugler
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
April 7, 2011

Before:  BARRY, FISHER and ROTH, Circuit Judges.

(Filed: July 21, 2011)
_____

OPINION
_____

PER CURIAM

Pro se appellant Juan Paulino, currently an inmate at the Moshannon Valley

Correctional Center in Philipsburg, Pennsylvania, appeals from the District Court's final

judgment in this action under 42 U.S.C. § 1983. For the reasons that follow, we will summarily affirm.

## I.

Paulino filed the underlying suit in the United States District Court for the District of New Jersey asserting violations of his constitutional rights while incarcerated as a pre-trial detainee at the Burlington County Jail in Mount Holly, New Jersey. Named as defendants in his amended complaint filed on January 28, 2008, are the Burlington County Jail, Warden Juel Cole, Acting Deputy Warden Lawrence Artis,[1] Chief of Security Captain Scholtz, and Corrections Officer Jonathan Cain. Paulino asserts that, on March 16, 2007, he was assaulted by several other inmates inside a cell on the E-Wing of the Burlington County Jail. Paulino contends that the inmates involved in the attack are members of the "Bloods" gang, who had previously tried to extort him and with whom he had experienced a problem earlier in the afternoon on the day of the attack. Paulino states that he informed Officer Cain that he "had a problem with a few of these inmates," but that Cain did nothing.

As a result of the assault, Paulino suffered lacerations to his face and his left leg was broken in three places at the ankle. After reporting the attack and being "written up" for the fighting incident, Paulino was taken to Virtua Hospital in Mount Holly, New

---

[1] It appears that defendant Artis' name is misspelled in the caption, despite the fact that the Magistrate Judge granted Paulino's motion to correct the spelling of defendant Artis' name in his complaint. See Magistrate Judge's Order entered 11/6/09 at 1 n.1.

Jersey, for treatment. At the hospital, Paulino received several stitches to the head, was given a CT scan of the brain – which indicated no abnormality – and was scheduled for surgery on March 22, 2007, for his fractured ankle. Paulino was returned to Burlington County Jail that same day and was placed in a medical holding cell, where he was administered Motrin for several days for pain relief. In his amended complaint, Paulino claims that prison administrators and officials knew that "gang issues" were a security problem at the jail, but refused to remedy the situation. He further asserts that the assault went "unnoticed" because Officer Cain did not make rounds on that particular wing as required. Finally, Paulina contends that Dr. Evans provided him with "inadequate treatment" by only giving him low doses of Motrin on the days prior to his surgery.[2]

Defendants Cole, Artis, Scholtz, Cain, and Burlington County Jail answered the amended complaint, deposed Paulino, and subsequently filed a motion for summary judgment. The District Court entered summary judgment in favor of these defendants, holding that Paulino's failure to protect claim failed insofar as defendants could not be said to have known of or disregarded an excessive risk to his safety, and that Paulino failed to show deliberate indifference on the part of defendants to his post-assault injuries. Paulino timely filed this appeal.

---

[2] As the District Court noted, Dr. Evans was not named as a defendant. Rather, Paulino listed a "Dr. Edwards" as a defendant. However, Paulino's summons was returned unexecuted as to Dr. Edwards, and the District Court dismissed him from the action in an order entered on April 16, 2010.

## II.

We have appellate jurisdiction under 28 U.S.C. § 1291. Our review is plenary of the District Court's order entering summary judgment. See Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 443 (3d Cir. 2003). We view the underlying facts, and all reasonable inferences therefrom, in a light most favorable to the non-moving party. Fasold v. Justice, 409 F.3d 178, 180 (3d Cir. 2005). After a careful review of the record, we will summarily affirm the District Court's judgment in accordance with Third Circuit Internal Operating Procedure Chapter 10.6.

## III.

### a. Failure-to-protect claim

Paulino alleges that defendants failed to protect him from the attack by members of the Bloods. Typically, a prisoner raises a failure to protect claim under the Eighth Amendment. See, e.g., Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). The legal framework for such a claim is clear: to establish a failure-to-protect claim, an inmate must demonstrate that (1) he is "incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison official acted with "deliberate indifference" to his health and safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). As the District Court recognized, however, Paulino is situated differently in that he is a pretrial detainee as opposed to a prisoner who has been convicted and sentenced. As a pretrial detainee, Paulino's claim is analyzed under the Due Process Clause of the Fourteenth Amendment, as opposed to the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535-36 (1979).

4

Under the Due Process Clause, "the proper inquiry is whether [the challenged] conditions amount to punishment of the detainee." Id. at 535. Thus, sentenced prisoners are protected from punishment that is "cruel and unusual," while pretrial detainees are protected from any punishment. See Hubbard v. Taylor, 399 F.3d 150, 166-67 (3d Cir. 2005).

While we have not previously addressed the standard governing a pretrial detainee's failure-to-protect claim in a precedential opinion, we have stated in dicta that the state of mind requirement for prisoners' claims – "deliberate indifference" – applies also to pretrial detainees' claims. See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1024 (3d Cir. 1991). We agree with the District Court and discern no basis to apply a different standard here as we have settled on "deliberate indifference" both in cases involving prisoners, see, e.g., Hamilton, 117 F.3d at 746 (failure to protect), and pretrial detainees, see Colburn, 946 F.2d at 1024 (detainee suicide). This conclusion is consistent with the holdings of numerous of our sister circuits, see, e.g., Caiozzo v. Koreman, 581 F.3d 63, 71 (2d Cir. 2009) (citing cases), as well as with the dictates of Bell.

Here, the District Court correctly concluded that Paulino made no showing of deliberate indifference by defendants. There was simply no record evidence that defendants were aware that Paulino was at risk of attack by any member of the Bloods gang, or any other inmate for that matter. See Farmer, 511 U.S. at 842; Hamilton, 117 F.3d at 747-48. Paulino's deposition testimony itself shows that he did little more than make a comment to Officer Cain about members of the Bloods attempting to control the

5

television in the Common Area.  See Defs.' Summ. J. Mot, Exh. D., Dep. Tr. at p. 19, line 25, p. 20, lines 1-6.  Paulino never advised any prison official of a problem with any particular inmate or group of inmates, nor did he ever submit a complaint about his attacker.  See id. at p. 32, lines 4-16.  Paulino's failure to put forth any evidence that the defendant prison officials were aware of any danger to him, let alone one posing a substantial risk of harm to him, is fatal to his failure to protect claim.

        b.        <u>Claim based on medical needs</u>

As noted previously, after the attack, Paulino was taken to the prison infirmary and then to the local area hospital where he received a diagnosis and treatment for his facial lacerations, head trauma, and broken leg.  He was returned to the prison infirmary, where he remained in a private or semi-private cell until such time as he was returned to the hospital for surgery.  After surgery, Paulino received treatment in the jail clinic by an outside physician, was provided with a brace and crutches, and received physical therapy which Paulino himself considered beneficial.  See id. at p. 43, line 20.

"To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm."  <u>Giles v. Kearney</u>, 571 F.3d 318, 330 (3d Cir. 2009).  "Deliberate indifference may be shown by intentionally denying or delaying medical care."  <u>Id.</u> (quotation marks omitted).  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  <u>United States ex rel. Walker v. Fayette Cnty.</u>, 599 F.2d

6

573, 575 n.2 (3d Cir. 1979) (quotation marks omitted).  We agree with the District Court that Paulino's contention that the hospital physician prescribed Percocet and advised him to avoid Motrin, but that the jail clinic only provided him Motrin, failed to set forth a claim of deliberate indifference.  Consequently, the District Court properly entered summary judgment on this claim.

## IV.

Because we conclude that this appeal presents "no substantial question," 3d Cir. I.O.P. Ch. 10.6, the District Court's judgment will be affirmed.