12-509-cv
Phelan v. Mullane

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of February, two thousand thirteen.

PRESENT: PIERRE N. LEVAL,
REENA RAGGI,
DEBRA ANN LIVINGSTON,
*Circuit Judges.*

------------------------------------------------------------------------

DESIREE PHELAN, by her parents JOHN PHELAN and ELLIEN PHELAN, JOHN PHELAN, ELLIEN PHELAN, individually,

*Plaintiffs-Appellant*s,

v.                                                     No. 12-509-cv

ELIZABETH MULLANE, individually and as director of medical services, MARISOL TORRES, individually and as caseworker, LETA MACADAEG, individually and as supervisor,

*Defendants-Cross-Claimants-Appellees*,

CITY OF NEW YORK, KINGS COUNTY HOSPITAL CENTER, NEW YORK HEALTH AND HOSPITALS CORPORATION,

*Defendants-Cross-Defendants-Appellees*,

ST. VINCENT'S SERVICES, INCORPORATED, MONICA HOOVER, individually and as caseworker, BARBARA FELTON, individually and as manager, ROBERT JACKSON, individually and as supervisor, KATHRYN CROFT, individually and as Deputy Commissioner, NICHOLAS SCOPPETTA, individually and as Commissioner,

*Defendants-Cross-Claimants-Cross-Defendants-Appellees*,

JEFFREY BIRNBAUM, M.D.,

*Cross-Claimant-Appellee*,

JUANITA BOWERS, individually and as director,

*Defendant-Cross-Claimant.*[*]

---

APPEARING FOR APPELLANTS: CAROLYN A. KUBITSCHEK, Lansner & Kubitschek, New York, New York.

APPEARING FOR APPELLEES: PATRICIA A. MURPHY, Murphy & James LLC, Pearl River, New York (Jonathan T. Uejio, Conway, Farrell, Curtin & Kelly P.C., New York, New York, *on the brief*), *for Appellees* Elizabeth Mullane, Marisol Torres, Leta Macadaeg, and St. Vincent's Services, Inc.

CARL J. SCHAERF (Bruce M. Strikowsky, *on the brief*), Schnader Harrison Segal & Lewis LLP, New York, New York, *for Appellees* City of New York, Monica Hoover, Barbara Felton, Robert Jackson, Kathryn Croft, and Nicholas Scoppetta.

---

[*] The Clerk of Court is directed to amend the official caption as shown above.

2

DRAKE A. COLLEY, (Edward F.X. Hart, *on the brief*), Assistant Corporation Counsel, *for* Michael Cardozo, Corporation Counsel of the City of New York, New York, New York, *for Appellees* Kings County Hospital Center and New York Health and Hospitals Corporation.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Edward R. Korman, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on January 11, 2012, is AFFIRMED.

Plaintiffs John and Ellien Phelan, suing on behalf of themselves and their adopted daughter Desiree, appeal from an award of summary judgment in favor of defendants St. Vincent's Services ("SVS"), Kings County Hospital Center ("KCHC"), the City of New York ("the City"), the City's Health and Hospitals Corporation ("HHC," and together with KCHC, "Hospital Defendants"), and various individual defendants associated with these entities, on the Phelans' claim that Desiree's mistreatment while in foster care violated rights protected by the Constitution, see 42 U.S.C. § 1983, as well as state law. We review an award of summary judgment de novo, and we will affirm only if the record, viewed in the light most favorable to the nonmoving party, reveals no genuine dispute of material fact. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Sudler v. City of New York, 689 F.3d 159, 168 (2d Cir. 2012). In conducting that review here, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm substantially for the reasons

3

stated by the district court in its detailed and carefully-reasoned opinion.  See Phelan ex rel. Phelan v. Torres, 843 F. Supp. 2d 259 (E.D.N.Y. 2011), *amended by* Phelan ex rel. Phelan v. Torres, Nos. 1:04-cv-3538; 1:06-cv-1663, 2011 WL 6935354 (E.D.N.Y. Jan. 3, 2012).

1.    St. Vincent's Services

Assuming without deciding that SVS qualifies as a state actor subject to suit under § 1983, on an independent review of the record, we conclude, as the district court did, that plaintiffs have failed to adduce evidence raising a triable issue of fact as to a policy or custom of inadequate supervision or training causally responsible for the injuries alleged here.

a.    Failure To Supervise Foster Placement

In urging otherwise, plaintiffs point to evidence that purportedly alerted all institutional defendants to the fact that children placed in foster care were vulnerable to abuse and that foster children with special needs required special care.  Even if this is correct, plaintiffs fail to offer evidence that any defect in SVS's supervision of the foster care placement of Desiree reflected a policy or custom of constitutional violations.  As the district court noted, the record shows that SVS placed Desiree with a woman who was not only a trained and licensed  foster care provider, but also a pediatric nurse.  She had no criminal record and no listing in the Central Register.  Further, she had previously cared for up to three foster children simultaneously without any incident of abuse.  See Phelan ex rel. Phelan v. Torres, 2011 WL 6935354, at *15.  On this record, plaintiffs cannot establish a constitutionally deficient placement policy simply by pointing to the general risk identified. Cf. Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) ("Plaintiffs are required to submit

4

evidence that defendants knew to a moral certainty that the City would confront a given situation . . . .").

Nor can they demonstrate a constitutionally defective policy or custom by noting that the foster parent's work schedule required her to spend time away from the children in her care. In such circumstances, SVS policy required a review of backup childcare plans. Insofar as the record reveals delay in conducting that review here, we conclude, like the district court, that even if the omission were to be deemed grossly negligent, it would be attributable not to any SVS policy or custom, but to the inaction of a non-policymaking employee. See City of Canton v. Harris, 489 U.S. 378, 387 (1989) (holding city not "automatically . . . liable under § 1983 if one of its employees happened to apply the policy in an unconstitutional manner"); Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012) (holding two or three instances of constitutional violations by low-level employees fell short of "showing abusive conduct among officers so persistent that it must have been known to supervisory authorities").

b.      Failure To Train

Plaintiffs also argue that by training its staff to recognize abuse only after it occurred, SVS violated its "constitutional obligation to take affirmative steps to prevent the abuse of foster children before it happened." Appellants Br. 44. See generally Cash v. County of Erie, 654 F.3d 324, 335 (2d Cir. 2011) ("[A]n affirmative duty, by its nature, implies a proactive responsibility to assess the risks of harm presented by given circumstances and to take reasonable preventive measures in advance of harm occurring . . . ."). This argument

5

fails because plaintiffs do not point to any specific training deficiency, and the record evidence on which they rely does not support their argument. See Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 130 (2d Cir. 2004) ("It is impossible to prevail on a claim that the Town's training program was inadequate without any evidence as to whether the Town trained its officers between the two demonstrations, how the training was conducted, [or] how better or different training could have prevented the challenged conduct . . . .").

Alternatively, plaintiffs submit that "[r]egardless of the training of SVS workers and the procedures that SVS instituted, St. Vincent's Services failed to do a proper study of Maitland's home before Desiree was placed with Maitland." J.A. 3339. More than a caseworker's omission in a single instance is necessary, however, to establish a policy or custom of inadequate training. See Amnesty Am. v. Town of West Hartford, 361 F.3d at 130 (requiring "plaintiffs to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor"); see also City of Canton v. Harris, 489 U.S. at 391 ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.").

c.  Claims Against SVS Employees Torres, Macadaeg, and Mullane in Their Individual Capacities

Plaintiffs fault Torres and her supervisor Macadaeg for not inquiring into Maitland's babysitting arrangements. But, as the district court correctly recognized, plaintiffs cannot charge these individuals with a constitutional violation in the absence of evidence that their

6

employment duties required such investigation, which is lacking here. See Phelan ex rel. Phelan v. Torres, 2011 WL 6935354, at \*16; see also Hernandez v. Keane, 341 F.3d 137, 147 (2d Cir. 2003) (upholding judgment as a matter of law in favor of defendants in deliberate indifference case where plaintiff failed to submit evidence that defendants had "direct responsibility, either officially or in practice," of placing medical hold on plaintiff).[1] As for Mullane, who is undisputedly a policymaker at SVS, plaintiffs cite her to press for Desiree to be tested for HIV and to act on her knowledge that the February 2, 1996 CT-scan displayed cranial abnormalities. Plaintiffs fail to demonstrate, however, how any of these omissions resulted in a constitutional deprivation. See Vives v. City of New York, 524 F.3d 346, 352 (2d Cir. 2008) (holding that "the policy must actually cause the constitutional violation"). As plaintiffs concede, Desiree was ultimately found not to be HIV-positive. Further, as the district court observed, there is no evidence that any doctor or nurse ever communicated to anyone, much less to Mullane in particular, that Desiree needed any tests or treatments beyond those the hospital provided. See Phelan ex rel. Phelan v. Torres, 2011 WL 6935354, at \*17.

Thus, summary judgment was properly granted in favor of SVS and its employees individually.

---

[1] Schwartz v. Booker, 702 F.3d 573 (10th Cir. 2012), cited by plaintiffs pursuant to Fed. R. App. P. 28(j), is inapposite because defendants in that case were responsible for investigating allegations of child abuse and failed to do so after being repeatedly alerted to the possibility of such abuse, see id. at \*2.

7

2.      Hospital Defendants

In arguing on appeal that HHC and KCHC demonstrated deliberate indifference to Desiree's constitutional rights through "a pattern of acts and omissions," Appellants Br. 47, plaintiffs fail, as they did in the district court, to distinguish between a pattern indicative of deliberate indifference and the pattern necessary to establish the policy or custom required for municipal liability, see Phelan ex rel. Phelan v. Torres, 2011 WL 6935354, at *19; see also Jones v. Town of East Haven, 691 F.3d at 80 ("Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee."). Certainly, plaintiffs do not point to any official policy or decision by a final policymaker that is unconstitutional. See Roe v. City of Waterbury, 542 F.3d 31, 36–37 (2d Cir. 2008). Instead, plaintiffs contend that "five separate acts of omission" over the course of a month demonstrate deliberate indifference by the Hospital Defendants. Appellants Br. 54. But even if these omissions indicate a pattern of indifference, more is required to show that the pattern was "sufficiently persistent or widespread as to acquire the force of law." Reynolds v. Giuliani, 506 F.3d at 192; see also Jones v. Town of East Haven, 691 F.3d at 81 ("[I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability."); cf. Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 440 (2d Cir. 2009) (identifying pattern where record showed more than one dozen contacts between plaintiff and different police officers, including high-ranking officers). The cases on which plaintiffs rely do not persuade us otherwise because they do not concern municipal

8

liability.  See Johnson v. Wright, 412 F.3d 398, 403–04 (2d Cir. 2005) (discussing prisoner claim of deliberate indifference against individual doctor defendant); Todaro v. Ward, 565 F.2d 48, 52–53 (2d Cir. 1977) (discussing deliberate indifference claims arising in prison context generally).

Insofar as plaintiffs sue Dr. Jeffrey Birnbaum individually for deliberate indifference based on his failure to review Desiree's prior medical chart, resulting in his failure to notice an increase in the circumference of her head, plaintiffs failed to adduce evidence that Birnbaum actually "knew of and disregarded an excessive risk to [plaintiff's] safety." Hilton v. Wright, 673 F.3d 120, 127 (2d Cir. 2012); see also Caiozzo v. Koreman, 581 F.3d 63, 70 (2d Cir. 2009) (applying deliberate indifference standard to Fourteenth Amendment claim). Notably, no evidence refutes Dr. Birnbaum's sworn testimony that nothing in the emergency room notes he was given referred to Desiree's prior records.  See Salahuddin v. Goord, 467 F.3d 263, 281–82 (2d Cir. 2006) (holding that defendant's "unsound conclusion absent an investigation" failed to demonstrate deliberate indifference because "simple blindness . . . leads only to a finding of unactionable negligence").

Thus, summary judgment in favor of the municipal and individual Hospital Defendants was proper.

4.    City of New York

Plaintiffs' claims against the City fail for the same reasons they fail against SVS.  No different conclusion is warranted by plaintiffs' citation to various City Comptroller reports critical of the City's foster care system.  These criticisms, as the district court noted, would

hardly support a finding of an unconstitutional policy in the foster placement of an infant with a pediatric nurse who had cared for other foster children without any concern arising. To the extent that plaintiffs' social work expert maintained that the City's failure to conduct a thorough home study "may have created the opportunity" for risk factors such as substitute care that "may or may not have contributed to what happened" to Desiree, J.A. 1020–21, the assertion is too speculative to create a triable issue of fact on the issue of causation, see Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (requiring more than "some metaphysical doubt as to the material facts" to survive summary judgment). In any event, as with inquiry omission by individual SVS employees, comparable failures by City employee Hoover are not indicative of a municipal policy or custom. See Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992). The district court did not err in requiring plaintiffs to submit evidence indicating a triable issue of fact in this regard. See Brown v. Eli Lilly & Co., 654 F.3d at 358.

Plaintiffs also argue that the City violated Desiree's constitutional rights by failing to provide her with proper medical care before February 27, 1996. Plaintiffs stipulated, however, that "they have no evidence" that the City defendants had actual knowledge of infant plaintiff's fractured ribs until on or after February 27, 1996. J.A. 956. Although plaintiffs contend that the City should have investigated following Desiree's first CT-scan on February 2, 1996, Dr. Ajl, plaintiffs' expert, testified that nothing in Desiree's file indicated that the City "could have known that [Desiree] was abused before [he] made the diagnosis of inflicted trauma" in late February. Id. at 808. In addition, "there was no

10

evidence that an investigation by [the City] was needed [because t]he child was only hospitalized [at that time]." J.A. 4356. Moreover, Dr. Ajl testified that it was reasonable for City employees to rely on the doctors' diagnoses, which did not indicate abuse. Thus, plaintiffs failed to adduce evidence giving rise to a triable fact on their claim that the City was deliberately indifferent to a known risk or duty regarding Desiree's issue of medical treatment.

5.    Individual City Defendant Hoover[2]

Plaintiffs argue that Monica Hoover was deliberately indifferent to Desiree's safety because she stayed "only a few minutes" when she brought Desiree to her foster home, making no inquiry as to the suitability of the placement. Hoover testified, however, that such a placement assessment was not part of her job duties. Plaintiffs point to the Child Welfare Administration policy manual in arguing otherwise, but they cite no provision in the manual indicating that it was Hoover's job to locate or approve foster parents. Moreover, plaintiffs' social work expert testified that she could not say that Hoover's actions or inactions caused any harm to Desiree. Accordingly, summary judgment in favor of Hoover was proper.

---

[2] Plaintiffs have forfeited their individual claims against Robert Jackson and Barbara Felton, see Phelan ex rel. Phelan v. Torres, 2011 WL 6935354, at *32; Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009), and abandoned their claim against Kathryn Croft, see Jackler v. Byrne, 658 F.3d 225, 233 (2d Cir. 2011).

11

6.    Conclusion

We have considered plaintiffs' remaining arguments on appeal and conclude that they are without merit.  Because plaintiffs' federal claims were insufficient to withstand summary judgment, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over plaintiffs' state law claims.  See New York Mercantile Exch., Inc. v. IntercontinentalExch., Inc., 497 F.3d 109, 119 (2d Cir. 2007).  Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court